**LOWENSTEIN SANDLER LLP**
A. Matthew Boxer
Gavin J. Rooney
Rasmeet K. Chahil
One Lowenstein Drive
Roseland, New Jersey 07068
973.597.2500

*Attorneys for Defendants LexisNexis Risk
Data Management, LLC and RELX Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, JANE DOE-1, *a law enforcement officer*, JANE DOE-2, *a law enforcement officer*, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PETER ANDREYEV, and WILLIAM SULLIVAN, <br><br> Plaintiffs, <br><br> v. <br><br> LEXISNEXIS RISK DATA MANAGEMENT, LLC, RELX INC., RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*, <br><br> Defendants. | Civil Action No. _____ <br><br><br> Removed from the Superior Court of New Jersey, Bergen County, Law Division <br><br> State Docket No.: BER-L-000875-24 |

## NOTICE OF REMOVAL

## D.N.J. LOCAL CIVIL RULE 10.1 STATEMENT

1.      The plaintiffs in this action are Atlas Data Privacy Corporation ("Atlas"), Jane Doe-1, Jane Doe-2, Edwin Maldonado, Scott Maloney, Justyna Maloney, Peter Andreyev, and William Sullivan ("Plaintiffs").  The address for Atlas is 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302.  The remaining Plaintiffs' street addresses are unknown to defendants LexisNexis Risk Data Management, LLC ("LNRDM") and RELX Inc. ("RELX", and together, "Defendants"), which are filing this Notice of Removal.  Defendants are unable to specify the street addresses of Plaintiffs Jane Doe-1 or Jane Doe-2, whose identities are unknown.  And Defendants are unable to identify the precise New Jersey addresses of the remaining individual Plaintiffs who, as is set forth in their Complaint, are law enforcement officers that have availed themselves of the ability under New Jersey law to conceal their address.  Plaintiffs are represented by Rajiv D. Parikh, Esq. and Kathleen Barnett Einhorn, Esq. of PEM Law LLP, 1 Boland Drive, Suite 101, West Orange, New Jersey 07052, John A. Yanchunis, Esq. of Morgan & Morgan, 201 N. Franklin Street, 7th Floor, Tampa, Florida 33602, and James Lee, Esq. of Boies Schiller Flexner LLP, 100 SE 2nd Street, 28th Floor, Miami, Florida 33131.

2.      The Defendants in this action are LNRDM, which has a principal place of business of 4013 NW Expressway, Suite 300, Oklahoma City, Oklahoma 73116, and RELX, which has a principal place of business of 230 Park Avenue, New York, New York 10169. Defendants are represented by A. Matthew Boxer, Esq., Gavin J. Rooney, Esq., and Rasmeet K. Chahil, Esq., of Lowenstein Sandler LLP, One Lowenstein Drive, Roseland, New Jersey 07068.

## NOTICE OF REMOVAL

3.      Defendants hereby remove to the United States District Court, District of New Jersey, the action pending as Case No. BER-L-000875-24 in the Superior Court of New Jersey, Law Division, Bergen County ("State Court Action").   Removal is proper because diversity jurisdiction exists in this case under 28 U.S.C. § 1332(a) and because this is a mass action and class action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  *See* 28 U.S.C. § 1441(a)–(b).  In support, Defendants state the following:

## I.    BACKGROUND

4.      On February 8, 2024, Plaintiffs filed the State Court Action against Defendants. A true and correct copy of Plaintiffs' complaint ("Complaint") is attached hereto as **Exhibit A**. Plaintiffs were served with the Complaint through their registered agent on February 14, 2024.

5.      This action is one of over 140 lawsuits filed by plaintiff Atlas asserting violations of New Jersey's Daniel's Law, N.J.S.A. 56:8-166.1, a statute intended to help judges, law enforcement officers, child protective investigators, prosecutors, and their immediate family members protect their home addresses and unpublished home telephone numbers from being publicly disclosed online.

6.      The statute allows such individuals ("Covered Persons") to request that a business or website refrain from publicly disclosing this information and provides that the recipient must comply within 10 business days, subject to "liquidated damages" of $1,000 "for each violation." N.J.S.A. 56:8-166.1(c)(1).

7.      According to the Complaint, Atlas provided an email platform called AtlasMail for Covered Persons to send non-disclosure requests to various businesses en masse. (Compl. ¶¶ 31–35.)

8.      The Complaint alleges that 19,249 Covered Persons assigned their Daniel's Law claims to Atlas and that Atlas is asserting those claims as the assignee.  (*Id*. ¶¶ 26, 30.)

9.      On March 15, 2024, Defendants requested copies of the assignments pursuant to New Jersey Court Rule 4:18-2, which requires an adverse party "[w]hen any document or paper is referred to in a pleading but is neither annexed thereto nor recited verbatim therein" to provide a copy within five days of a written demand.  Despite the clear language of the Rule, Plaintiffs did not provide the assignments within five days.  Indeed, even after follow-up efforts on, for example, April 8, April 10, April 23, and April 30, 2024, Plaintiffs have not yet produced the assignment documents to Defendants, despite Defendants agreeing to the entry of a Protective Order, which Plaintiffs said would be required before any such production.

10.     On May 3, 2024, Defendants discovered that a copy of the assignment documents were filed that day as exhibits to a remand motion filed in other Daniel's Law cases pending in federal court.  Specifically, Atlas' Daniel's Law Service Terms, last updated February 4, 2024 ("Service Terms"), attached here as **Exhibit B**, and an exemplar Assignment Confirmation email ("Assignment Confirmation" and together, the "Assignment Documents"), attached here as **Exhibit C**, were attached to Plaintiffs' filing.

11.     The Assignment Documents show that any assignments made to Atlas by Covered Persons were only partial assignments and that the Covered Persons retain a financial interest in the assigned claims.  Specifically, the Service Terms provide that 65% of the net recovery through settlement or judgment of a Daniel's Law claim will be returned to the Covered Person.  (Ex. B § 4(e)(ii).)  The Assignment Confirmations seem to have been hastily sent before this case and others were filed.  The date and time on the exemplar Assignment shows that it was sent on February 8, 2024 at 5:35 p.m., mere hours before this case was filed at 9:46 p.m. on

February 8, 2024.[1]  (*See* Exs. A & C.)  These facts were not previously known from the face of the Complaint, and they revealed that both diversity jurisdiction and jurisdiction under CAFA exist here, prompting this Notice of Removal.

12.    This Notice of Removal is based on the allegations of the Complaint and the Assignment Documents and does not admit the truth of the facts asserted in the Complaint, the validity of Plaintiffs' claims, or the entitlement to any form of relief.  Rather, Defendants expressly deny that Plaintiffs are entitled to any relief.

## II.    LEGAL STANDARD

13.    "[T]he grounds for removal should be made in 'a short plain statement,' just as required of pleadings under Fed. R. Civ. P. 8(a)."  *Grace v. T.G.I. Fridays, Inc.*, No. 14-7233 (RBK/KMW), 2015 U.S. Dist. LEXIS 97408, at *8–9 (D.N.J. July 27, 2015) (quoting *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014)).  The same liberal rules that apply to other matters of federal pleading apply to removal allegations.  *See Dart Cherokee*, 574 U.S. at 87.  "No evidentiary support is required, and the Court should accept a removing defendant's allegations unless they are contested by the plaintiff or questioned by the Court."  *Farrell v. FedEx Ground Package Sys., Inc.*, 478 F. Supp. 3d 536, 540 (D.N.J. 2020) (citing *Dart Cherokee*, 574 U.S. at 87); *see also Vaccaro v. Amazon.com.dedc, LLC*, No. 18-11852(FLW), 2019 U.S. Dist. LEXIS 40193, at *7 (D.N.J. Mar. 13, 2019).

14.    For example, where, as here, state practice does not require the demand of a specific sum of damages, the notice of removal may state the amount in controversy in the first instance.  "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee*, 574 U.S. at 89.

---

[1]    The Assignment Confirmation was sent at 10:35 p.m. UTC, which is 5:35 p.m. EST.

### III. <u>THIS COURT HAS DIVERSITY JURISDICTION PURSUANT TO 28 U.S.C. § 1332(a).</u>

#### A. <u>Complete Diversity Exists.</u>

15.     This Court can exercise diversity jurisdiction over this case under 28 U.S.C. § 1332(a), under which a District Court shall have original jurisdiction over a civil action when the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

16.     RELX is incorporated in Delaware and has its principal place of business in New York.

17.     Since LNRDM is a limited liability company, its citizenship for traditional diversity purposes is determined by the citizenship of each of its members.  *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010).  RELX is the sole member of LNRDM.  Thus, LNRDM has Delaware and New York citizenship for the diversity analysis.

18.     Each of the Individual Plaintiffs are current or former New Jersey law enforcement officers, and are alleged to be "liv[ing]" or "working" in New Jersey currently:

      a. Plaintiff JANE DOE-1 is described as a police officer "working in Northern New Jersey."  (Compl. ¶ 16.)

      b. Plaintiff JANE DOE-2 is described as a correctional police officer who "lives in Northern New Jersey."  (*Id.* ¶ 17.)

      c. Plaintiff Edwin Maldonado is described as a member of the Plainfield, New Jersey police department.  (*Id.* ¶ 18.)

      d. Plaintiffs Scott Maloney and Justyna Maloney are described as police officers "currently serving with the Rahway, New Jersey Police Department."  (*Id.* ¶ 19.)

e.  Plaintiff Peter Andreyev is described as a veteran of the Point Pleasant, New Jersey police department, and current Executive Vice President of the New Jersey State Policemen's Benevolent Association ("PBA"). (*Id*. ¶ 23.)

f.  Plaintiff William Sullivan is described as a veteran of the New Jersey Department of Correction and the current President of New Jersey PBA Local 105. (*Id*. ¶ 24.)

19.    Under New Jersey law, "[e]very member of a police department and force shall be a resident of the State of New Jersey while serving in such position."  N.J.S.A. 40A:14-122.8. Accordingly, by all appearances, each of the Individual Plaintiffs is a citizen of New Jersey.

**B.  Atlas's Citizenship Should be Disregarded in the Diversity Analysis.**

20.    The Complaint alleges that Atlas is a Delaware corporation with its principal place of business in New Jersey.  (Compl. ¶ 25.)  The alleged assignment of approximately 19,000 individuals' claims to Atlas was done as part of a collusive effort to avoid federal jurisdiction.    Therefore, the citizenship of Atlas should be disregarded for purposes of determining diversity.

21.    *In Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 825–27 (1969), the Supreme Court held that assignments, even ones permissible under state law, can be disregarded for diversity purposes where "improperly or collusively" made for purposes of manipulating diversity jurisdiction.  The Supreme Court has since stated that the "diversity jurisdiction statute [requires] courts in certain contexts to look behind the pleadings to ensure that parties are not improperly creating or destroying diversity jurisdiction." *Miss. ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 174 (2014).  While *Kramer* involved an assignment that was used to create diversity, *see Kramer*, 394 U.S. at 828, federal courts around the country have extended *Kramer*'s reasoning to apply to assignments used to defeat diversity.  *See, e.g., Att'ys Trust v.*

*Videotape Comput. Prods., Inc.*, 93 F.3d 593, 597–600 (9th Cir. 1996); *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 184–86 (5th Cir. 1990); *Slater v. Republic-Vanguard Ins. Co*., 650 F.3d 1132, 1135 (8th Cir. 2011) ("In many cases considering whether a partial assignment created or destroyed diversity jurisdiction, federal courts have disregarded assigned or retained interests that were more substantial than the $100 interest retained by LCI."); *Cambridge Place Inv. Mgmt., Inc. v. Morgan Stanley & Co.*, 813 F. Supp. 2d 242, 244–45 (D. Mass. 2011) (concluding, after jurisdictional discovery, that assignments were collusive and disregarding assignments for purposes of determining diversity jurisdiction).

22.    While the Third Circuit has not had occasion to consider this issue, courts around the country have not hesitated to disregard the citizenship of an assignee in situations like this. For example, in *Grassi*, the Fifth Circuit upheld the denial of a remand motion where the plaintiffs made a partial assignment of their claim, and the assignee "had no legitimate and independent interest in the litigation, but was simply providing litigation support services on a contingent fee arrangement at the behest of the appellants' attorney." 894 F.2d at 182, 186.  The court held "that federal district courts have both the authority and the responsibility, under 28 U.S.C. §§ 1332 and 1441, to examine the motives underlying a partial assignment which destroys diversity and to disregard the assignment in determining jurisdiction if it be found to have been made principally to defeat removal." *Id*. at 185.  As in *Grassi*, the assignments here occurred shortly before the Daniel's Law actions were filed and represent what is essentially a contingent fee arrangement, which could have been effectuated without an assignment. *See id*. at 186.

23.    When considering whether assignments are collusive, courts consider a number of factors.  Some of the factors to be considered are whether the assignor retained an interest in the

claims, the assignee is paying for and/or directing the litigation, the assignee had an independent interest in the dispute prior to the execution of the assignments, and the assignments were motivated by an improper desire to manipulate federal jurisdiction. *See Long John Silver's, Inc. v. Architectural Eng'g Prods. Co.*, 520 F. Supp. 753, 756–57 (W.D. Pa. 1981). Additionally, courts may consider the size of the interest assigned, whether the assignor and assignee had separate counsel, whether the assignee's attorney is controlling the litigation, the timing of the assignment, whether the assignment could be considered a sort of contingent fee arrangement, and whether there is a strong likelihood of prejudice against the defendant. *Grassi*, 894 F.2d at 186.

24.     It is now known that the assignments here are partial and convey only a 35% interest in the claims to Atlas. The Assignment Documents show that after retaining 35% of the net recoveries on the claims, Atlas is required to remit 65% of the net recoveries to the Covered Persons. (Ex. B § 4(e)(ii).) This is in essence a contingent fee arrangement, which could be accomplished without the assignments. That is further evidenced by the fact that under the Service Terms, Atlas apparently is charging the same 35% fee for claims that have ***not*** been assigned, as "Service Fees" that "support[] our development of the platform and related services." (*Id*. § 5.) The Service Terms provide that for claims not assigned, Covered Persons are to pay "Atlas thirty-five percent (35%) [of any damages or settlement] and will make payment to Atlas for the Service Fee within fourteen (14) days following [the Covered Persons'] receipt of the recovered amounts." (*Id*.) The Service Terms further provide that each Covered Person irrevocably appoints Atlas as its attorney-in-fact to make payment of the Service Fees to Atlas on his or her behalf. (*Id*.) Thus, Atlas developed a mechanism to be paid 35% of each claim without any assignment, further showing that the assignments themselves are a sham.

25.     The exemplar Assignment Confirmation reveals that all or most of the assignments were likely made very shortly before this litigation was filed.  The Assignment Confirmation was sent on February 8, 2024 at 5:35 p.m., just ***four hours*** before this case was filed at 9:46 p.m. on February 8, 2024.  (*See* Exs. A & C.)  While Defendants do not have all of the Assignment Confirmations—despite requesting them multiple times from Plaintiff's counsel—given Atlas' history of sending out mass emails, it would not be surprising if all or many of the Assignment Confirmations were sent at the same time.[2]

26.     Prior to the assignments, Atlas did not have an independent interest in these suits, other than its interest in profiting from Daniel's Law.  Thus, this case is not like *Long John Silver's*, where a franchisor required its franchisees to install roofs from a particular supplier at its locations, which turned out to be defective, and the franchisees then assigned their claims against the supplier to the franchisor.  520 F. Supp. at 755.  In finding that the franchisor had a legitimate independent business interest in the dispute that predated the assignments, the court noted that because it required the installation of the roofs at issue, the franchisor "has an interest, and quite possibly a legal obligation, to rectify the problem which has arisen with regard to them."  *Id*. at 756.  The court further found that as the owner of a registered service mark covering the distinctive building design, including the roof, the franchisor had a valid business reason to protect the appearance of its franchised shops to avoid an adverse reflection on the entire franchise chain.  *Id*. at 756–57.  Finally, warranties regarding the roofs were made to the franchisor, putting it "in the best position to litigate the claims based upon a 'sales pitch' allegedly made directly to it."  *Id*. at 757.

---

[2]     The recently disclosed Assignment Confirmation indicates that in at least one other Daniel's Law case filed by Atlas, the purported assignment actually was made *after* that suit was filed on February 7, 2024.  *See* Amended Notice of Removal, *Atlas Data Privacy Corp. v. Blackbaud, Inc*., No. 1:24-cv-03993 (May 13, 2024).

27.     This case contains no such facts.  Other than providing the email system used to send out the non-disclosure requests, Atlas had no involvement with the claims assigned to it.  It has no more of an interest in the claims than Google would if the Covered Persons had used their Gmail accounts to send the non-disclosure requests.

28.     While discovery will reveal the true motivations behind the assignments, the selection of Delaware as Atlas' place of incorporation—the most common state of incorporation for businesses—indicates a desire to keep as many of the Daniel's Law cases out of federal court as possible.  The Assignment Documents indicate that the assignments were made collusively to avoid federal jurisdiction, and Atlas' citizenship therefore must be disregarded for the diversity analysis.

### C.  <u>The Amount in Controversy Exceeds $75,000.</u>

29.     As to the amount in controversy, when "the plaintiff's complaint does not include a specific monetary demand, the removing defendant need only 'plausibl[y] alleg[e]' the amount in controversy."  *Yucis v. Sears Outlet Stores, LLC*, 813 F. App'x 780, 782 n.2 (3d Cir. 2020) (alteration in original) (quoting *Dart Cherokee*, 574 U.S. at 89).  Plaintiffs do not allege a specific dollar amount of damages in the Complaint but seek numerous forms of relief—including actual or liquidated damages of at least $1,000 "per violation" of Daniel's Law, punitive damages, temporary and permanent injunctive relief, attorneys' fees, and both pre- and post-judgement interest—based on Defendants' alleged failure to satisfy non-disclosure requests within the time period required by Daniel's Law.  These allegations are entirely without merit, and Defendants deny any and all liability.  But for purposes of this Notice of Removal, taking Plaintiffs' allegations as true and correct, the "possible" amount in controversy easily exceeds $75,000.

30.     Atlas purports to assert claims on behalf of 19,249 covered persons under Daniel's Law, for at least $1,000 "for each violation" of the statute.  (Compl. ¶ 26.)  Even using the "minimum" amount by assuming a single violation per individual, the damages sought by Atlas total over $19 million.

31.     Atlas might argue that Defendants do not get to benefit from assignment aggregation in light of Defendants' argument that Atlas's citizenship should be disregarded in assessing diversity jurisdiction.  In so arguing, Atlas would be wrong.  Diversity of citizenship is a concept distinct from the amount in controversy, and Atlas should not be allowed to collusively aggregate Daniel's Law claims via assignment to it as a single plaintiff while arguing that aggregation should be disregarded for purposes of the amount in controversy.  Moreover, Defendants do not argue here (but reserve the right to do so later) that the assignments are invalid—only that they should be disregarded in assessing citizenship.  Based on the Complaint's allegations about the assignments, Atlas is a single plaintiff with claims valued at more than $19,249,000.   The Court can exercise traditional diversity jurisdiction over Atlas and supplemental jurisdiction over the other plaintiffs.

32.     But even if that were not the case and Atlas were disregarded not only in the citizenship analysis but also in the amount in controversy analysis, the individual plaintiffs each, on their own, satisfy the amount in controversy requirement.  Every individual plaintiff seeks (1) "actual damages, not less than the liquidated damages under Daniel's Law, at '$1,000 for each violation,'" (2) "an additional amount in punitive damages, to be determined by the Court, for 'willful noncompliance' as allowed under Daniel's Law," (3) "reasonable attorneys' fees," and (4) "injunctive relief."  (*Id.* at 22.)  Adding together potential statutory, actual, and punitive

damages, as well as the value of injunctive relief and attorneys' fees, each Plaintiff has put far more than $75,000 in controversy.

33.     As noted above, the Complaint seeks statutory damages of $1,000 for "each violation" of Daniel's Law.  (*Id.*)  The Complaint does not specify the number of "violations" claimed but alleges that (i) protected information for the Individual Plaintiffs "remains 'available or viewable within a searchable list or database' or otherwise made available" by Defendants (*id.* ¶ 60); and (ii) "each" failure to "cease the disclosure or re-disclosure" of that information "constitute[s] a separate violation under the law" (*id.* ¶ 61).  The Complaint thus appears to allege multiple violations for each of the Individual Plaintiffs.  Were this theory accepted, the statutory damages alone could cross the $75,000 threshold for each Individual Plaintiff. Defendants dispute any interpretation of Daniel's Law that would allow a single plaintiff to recover statutory damages for multiple "violations" of the law.  Nonetheless, because no court has ruled on the issue, the potential for additional violations per person should be considered in determining the amount in controversy.  *See, e.g.*, *Peatry v. Bimbo Bakeries USA, Inc.*, 393 F. Supp. 3d 766, 769–70 (N.D. Ill. 2019) (finding removal proper of complaint asserting violations of Illinois Biometric Information Privacy Act because plaintiff did not show that recoverable amount based on "per violation" theory was "legally impossible").

34.     Plaintiffs also seek actual damages and may try to seek recovery for the costs of measures they have allegedly taken for their personal safety or for alleged anxiety or emotional distress.  Such alleged damages would also contribute to the total amount of compensatory damages sought.  *See, e.g.*, *Yucis*, 813 F. App'x at 782 n.2 (holding that removing defendant plausibly alleged more than $75,000 in controversy based on allegations that plaintiff

experienced "pain, suffering, embarrassment, and humiliation" as result of sexual harassment, as well as attorneys' fees).

35.     In addition, Daniel's Law states that the Court may award "punitive damages upon proof of willful or reckless disregard of the law."  N.J.S.A. 56:8-166.1(c)(2).  Plaintiffs have asked the Court to award such damages for "willful noncompliance."  (Compl. at 22.)  The Third Circuit has held that claims for punitive damages that are made in good faith "will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum."  *Huber v. Taylor*, 532 F.3d 237, 244 (3d Cir. 2008) (emphasis omitted) (quoting *Golden ex rel. Golden v. Golden*, 382 F.3d 348, 355 (3d Cir. 2004)).

36.     Under New Jersey law, defendants can be liable for punitive damages in an amount up to "five times the liability of that defendant for compensatory damages or $350,000, whichever is greater."  N.J.S.A. 2A:15-5.14(b).  While Defendants reject any notion that punitive damages are appropriate here, by seeking punitive damages under New Jersey law, Plaintiffs have presumptively placed $350,000 in controversy for each individual plaintiff.

37.     The Complaint also seeks attorneys' fees.  (Compl. at 22.)  "[I]n calculating the amount in controversy, we must consider potential attorney's fees . . . . [A]ttorney's fees are necessarily part of the amount in controversy if such fees are available to successful plaintiffs under the statutory cause of action."  *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997) (citation omitted).  A typical rule of thumb in the Third Circuit in calculating attorneys' fees to determine the amount in controversy is thirty percent of the compensatory and/or punitive damages.  *See, e.g.*, *Ciccone v. Progressive Specialty Ins. Co.*, No. 3:20-CV-981, 2020 U.S. Dist. LEXIS 232855, at *12 (M.D. Pa. Dec. 11, 2020) (including attorneys' fees in amount of thirty

percent of total of plaintiff's compensatory and treble damages to find that plaintiff's individual claims met amount in controversy); *Rodriguez v. Burlington Cnty. Corr. Dep't*, No. 1:14-cv-04154 (NLH0JS), 2015 U.S. Dist. LEXIS 22456, at *6 (D.N.J. Feb. 25, 2015) ("The Third Circuit has noted that attorney's fees can be estimated to be as high as 30% of the final judgment."). As outlined above, the Complaint plausibly alleges compensatory damages and punitive damages that already far exceed the $75,000 threshold for each individual plaintiff. If those damages were increased by another 30 percent to account for attorneys' fees, there can be no doubt that the amount in controversy is satisfied.

38.    Finally, Plaintiffs seek broad injunctive relief tied to Defendants' ongoing compliance with Daniel's Law. In the Third Circuit, the value of injunctive relief may be considered in determining the amount in controversy, and "is measured by the value of the interest sought to be protected by the equitable relief requested." *Hunter v. Greenwood Trust Co.*, 856 F. Supp. 207, 219 (D.N.J. 1992); *In re Corestates Trust Fee Litig.*, 39 F.3d 61, 65 (3d Cir. 1994) ("In injunctive actions, it is settled that the amount in controversy is measured by . . . 'the value to the plaintiff to conduct his business or personal affairs free from the activity sought to be enjoined.'" (citations omitted)). Here, the interest the Complaint putatively seeks to protect is the interest of the Covered Persons in their physical safety and freedom from threatening communications. (*See* Compl. ¶¶ 16–24 (alleging that individual Plaintiffs face threats to their safety and/or receive threatening phone calls or text messages based on disclosure of their home addresses and phone numbers)). While Defendants emphatically reject any allegation that they have engaged in conduct that has endangered this interest, Plaintiffs would surely contend that the value of this interest exceeds $75,000 for each of the Covered Persons.

39.     Because the parties are completely diverse and the amount in controversy exceeds $75,000, the requirements of diversity jurisdiction are satisfied.

## IV. THIS COURT HAS JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT.

40.     In addition, or in the alternative, to finding that this case is removable under 28 U.S.C. § 1332(a), removal is proper because this case is a "mass action" under CAFA, and all other requirements for CAFA jurisdiction are satisfied.

41.     "Congress enacted [CAFA] to facilitate adjudication of certain class [and mass] actions in federal court." *Dart Cherokee*, 574 U.S. at 89 (citation omitted). CAFA's "provisions should be read broadly," and there is a "strong preference" that interstate actions like this one "should be heard in a federal court if properly removed by any defendant." *Id.* (quoting S. Rep. No. 109-14, at 43 (2005)). In particular, CAFA allows federal courts to exercise jurisdiction over "mass actions," defined as "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact," 28 U.S.C. § 1332(d)(11)(B)(i), where certain requirements are satisfied. Specifically, jurisdiction over such actions is proper if: (1) any plaintiff is a citizen of a state different from any defendant (i.e., minimal diversity exists), and (2) the amount in controversy exceeds $5 million in the aggregate and $75,000 for individual plaintiffs. *Id.* § 1332(d)(2)(A), (d)(6), (d)(11)(B)(i). These requirements are satisfied here.

### A. This Is a "Mass Action" Within the Meaning of CAFA.

42.     Under CAFA, "the term 'mass action' means any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." *Id.* § 1332(d)(11)(B)(i).

43.     The "question is not whether 100 or more plaintiffs answer a roll call in court, but whether the '*claims*' advanced by 100 or more persons are proposed to be tried jointly." *Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008) (emphasis added).  "Where a single complaint joins more than 100 separate claims involving common questions of law and fact, there is a presumption that those plaintiffs have implicitly proposed a joint trial." *Ramirez v. Vintage Pharms.*, *LLC*, 852 F.3d 324, 329 (3d Cir. 2017) (citation omitted).

44.     Here, Atlas alleges that it is the assignee of monetary relief claims of "approximately 19,249 individuals"—well in excess of the 100-claim threshold—but purports to assert them collectively in the Complaint.  (Compl. ¶ 26; *see generally id.*)  However, as described above, Atlas is only a *partial* assignee of the claims being asserted on behalf of these individuals—meaning that each of the 19,249 assignors retain an interest in individual "monetary relief claims" being asserted in the action.  Where a person assigns away only part of his claim, that person continues to be a "real part[y] in interest" to any litigation brought to vindicate that claim.  *Grassi*, 894 F.2d at 185.  This is precisely the case here.

45.     While the Supreme Court in *Hood* declined to look beyond the named plaintiff (the State of Mississippi) for CAFA purposes, this case is distinguishable from *Hood*.  In *Hood*, an antitrust case, the State brought a claim for restitution based on injuries suffered by the State's citizens for purchases of products with artificially inflated prices.  *Id*. at 164, 166.  The Court found that identifying the unnamed parties there would be an "administrative nightmare" because determining the product sales that occurred during ten-year period alleged in the complaint would require looking at "decades-old records," which the State did not claim to have.  *Id*. at 171–72.  *Hood* did not consider whether the result would be the same in a case involving collusive assignments, where there is a critical difference—there is a record of each claim

assigned.  In contrast to *Hood*, Atlas has a list of all of the Covered Persons that submitted non-disclosure requests through its portal, which it has produced to other defendants in the Daniel's Law cases pending in federal court.[3]  Thus, the real parties in interest here are readily ascertainable.

46.     That Atlas did not name each of the 19,249 assignors in the case caption does not change the fact that Atlas is not suing on its individual behalf but is entitled to bring each claim alleged in the Complaint only as the assignee for a corresponding and specific assignor, each of whom retains an interest in the claims being asserted on their behalf in the litigation.  Thus, because Atlas is suing to recover for the "monetary relief claims of 100 or more persons" in a single lawsuit, 28 U.S.C. § 1332(d)(11)(B)(i), the mass-action numerosity element is satisfied.

**B.   CAFA's Minimal Diversity Requirement Is Satisfied.**

47.     CAFA requires minimal diversity among the parties, meaning that just one class member must be a citizen of a different state from at least one defendant.  28 U.S.C. § 1332(d)(2)(A).

48.     As noted above, RELX is incorporated in Delaware and has its principal place of business in New York.

49.     Under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."  28 U.S.C. § 1332(d)(10).  A limited liability company is an "unincorporated association" within the meaning of CAFA, so its state of organization, rather than the citizenship of its members, is considered under CAFA.  *See, e.g.*, *Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 699–700 (4th Cir. 2010) ("[A] limited liability company is an

---

[3]    Despite Atlas' representations that it provided the Covered Persons lists to all federal defendants, it did not provide the list to LNRDM, which is a defendant in another federal case pending before this Court, *John Doe-1 v. LexisNexis Risk Data Management, LLC*, No. 1:24-cv-04566-HB.

'unincorporated association' as that term is used in 28 U.S.C. § 1332(d)(10) and therefore is a citizen of the State under whose laws it is organized and the State where it has its principal place of business."); *Siloam Springs Hotel, LLC v. Century Sur. Co.*, 781 F.3d 1233, 1237 n.1 (10th Cir. 2015) ("It is worth noting that Congress has indeed prescribed a different rule as to unincorporated associations for purposes of the Class Action Fairness Act.").

50.    LNRDM is a limited liability company organized under the laws of Delaware, and its principal place of business is in Oklahoma.

51.    As discussed above, based on the face of the Complaint, each of the individual Plaintiffs is a citizen of New Jersey.  *See supra* ¶¶ 18–19.

52.    Because Defendants' citizenship (Delaware, New York, and Oklahoma) is different from the citizenship of at least one plaintiff (New Jersey), the minimal diversity requirement is satisfied.

### C.  CAFA's Amount in Controversy Requirement Is Satisfied.

53.    CAFA provides that "[i]n any class [or mass] action, the claims of the individual class members [or plaintiffs] shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6), (d)(11)(A).  In the case of mass actions, there is an additional requirement that "jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under [28 U.S.C. § 1332(a)]," which requires that the amount in controversy exceed $75,000.  *Id.* § 1332(a), (d)(11)(B)(i).  In other words, CAFA confers federal jurisdiction over a mass action where the aggregate amount in controversy exceeds $5 million and over individual plaintiffs participating in that mass action where their individual amount in controversy exceeds $75,000.

54. As stated above, Defendants deny the validity and merit of Plaintiffs' claims. Nevertheless, for purposes of setting forth grounds for this Court's jurisdiction—and without conceding that Plaintiffs are entitled to damages or any relief whatsoever—it is apparent that both amount-in-controversy requirements for CAFA mass action removal are met here.

55. As to the aggregate amount in controversy, the $5,000,000 threshold is easily satisfied by the Complaint's request for statutory damages under Daniel's Law. Atlas purports to assert claims on behalf of 19,249 covered persons, on top of the claims of the seven named plaintiffs, all for at least $1,000 "for each violation" of the statute. At a minimum, looking simply at the statutory damages sought in the Complaint, the "aggregate" damages sought in the Complaint totals over $19.2 million.

56. And as to the "individual" amount in controversy, as stated and explained above, the "possible" damages for each of the Covered Persons readily exceeds $75,000. *See supra* ¶¶ 32–38. Adding together potential statutory, actual, and punitive damages that the Complaint seeks, as well as the putative value of injunctive relief and attorneys' fees, the individual jurisdictional threshold has been met.

### D. This is a "Class Action" within the Meaning of CAFA.

57. While not necessary for removal, this suit additionally satisfies all of CAFA's requirements for federal jurisdiction over a "class action" because (1) there is minimal diversity between the parties; (2) the aggregate amount-in controversy exceeds $5,000,000; (3) the putative class exceeds 100 members; and (4) the suit is a "class action" within the meaning of CAFA. *See Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014) (quoting 28 U.S.C. § 1332(d)(2), (5)(B), (6)).

58.     Although CAFA requires that the case be filed under a state law analogue of Rule 23 to be considered a "class action," the analogous state law need not be pled in the complaint to satisfy CAFA.  That is because "a plaintiff could avoid federal jurisdiction for a lawsuit that resembles a class action in all respects simply by omitting from the complaint the name of the rule or statute under which she proceeds." *Williams v. Emps. Mut. Cas. Co.*, 845 F.3d 891, 901 (8th Cir. 2017); *see also Badeaux v. Goodell*, 358 F. Supp. 3d 562, 567 (E.D. La. 2019) ("A lawsuit resembling a class action will not escape CAFA jurisdiction simply because it omits the words 'class action' or does not include the state rule or statute under which it proceeds as a class action.").  Accordingly, "[i]f a complaint does not satisfy CAFA's jurisdictional requirements on its face, [courts] must cut through any pleading artifice to identify whether the case is in substance an interstate class action." *Erie Ins. Exch. v. Erie Indem. Co*., 68 F.4th 815, 819 (3d Cir. 2023).  Despite the façade of assignments here, in reality Atlas is acting as the purported representative of a class of more than 19,000 unnamed Covered Persons, rendering this case a "class action" under CAFA.

**E.  <u>None of the CAFA Exceptions Apply.</u>**

59.     CAFA provides two mandatory exceptions and one discretionary exception to the application of federal jurisdiction that potentially allow for remand.  *See* 28 U.S.C. § 1332(d)(3)–(4).  None of those exceptions applies here.  Each CAFA exception requires, as a starting point, an in-state defendant.  *See id.* § 1332(d)(3), (d)(4)(A)(i)(II) (requiring either "significant relief" to be sought from an in-state defendant (local controversy exception) or requiring the "primary defendant" to be an in-state defendant ("home state" and discretionary exceptions)).

60.     Here, as shown above, neither RELX nor LNRDM is a citizen of New Jersey.  *See supra* ¶¶ 48, 50.  Therefore, none of the CAFA exclusions apply.

61.     The Complaint is removable under CAFA.

## 28 U.S.C. § 1446 REQUIREMENTS

62.     **Removal is timely**.  A notice of removal may be filed within 30 days after the defendant receives a copy of the initial pleading, motion, or "other paper" from which it may be ascertained that the case is removable.  28 U.S.C. § 1446(b)(3).  This Notice relies on information concerning the nature of Atlas's putative claims and the assignments underlying those claims discovered by Defendants on or about May 3, 2024.  While the notion that Covered Persons under the Daniel's Law statute had "assigned their rights" to Atlas was referenced in the Complaint (Compl. ¶ 30), Defendants did not know the terms of those purported assignments— which showed, among other things, that the assignments were only partial—until seeing copies of the Assignment Documents attached to Plaintiffs' remand motion filed in other federal cases on May 3, 2024.  Defendants had diligently requested copies of the assignments pursuant to New Jersey Court Rule 4:18-2 on March 15, 2024, and followed up on the request multiple times, but have not yet received the assignments pursuant to that request.

63.     Section 1446(b)(3) permits removal if an amended pleading or other paper received after the initial pleading contains new information that enables removal.  *See Portillo v. Nat'l Freight, Inc.*, 169 F. Supp. 3d 585, 593 (D.N.J. 2016) ("[I]n the face of an indeterminate pleading, the 30-day removal clock does not begin to run until litigation documents, subsequent to the initial pleading, reveal facts supporting removal."); *Rosenfield v. Forest City Enters., LP*, 300 F. Supp. 3d 674, 680 (E.D. Pa. 2018) (finding removal proper where plaintiffs filed case management conference memorandum asserting for first time that amount in controversy was over $75,000, and removal notice was filed within thirty days of the memorandum).  Moreover, "a defendant may remove a case when the fruits of its own independent investigation

demonstrate that the case satisfies [federal jurisdiction] requirements." *Portillo*, 169 F. Supp. 3d at 596. That is what occurred here—by independently obtaining the Assignment Documents, Defendants determined that this case is removable. Only after reviewing the Assignment Documents could Defendants make this determination. *See McLaren v. UPS Store Inc.*, 32 F.4th 232, 239 (3d Cir. 2022) ("[E]nsuring that the § 1446(b) clocks are not triggered by unclear or incomplete information about removability discourages defendants from 'remov[ing] cases prematurely for fear of accidentally letting the thirty-day window to federal court close.'" (quoting *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 399 (5th Cir. 2013))). This Notice of Removal is thus timely filed.

64.    **Removal to proper court**. This Court is part of the "district and division within which" this action was filed—Bergen County, New Jersey. 28 U.S.C. § 1446(a).

65.    **Pleadings and process**. Pursuant to 28 U.S.C. § 1446(a), a "copy of all process, pleadings, and orders served upon" Defendants in the State Court Action are attached to this Notice of Removal as **Exhibit A** (Complaint and Civil Case Information Statement) and **Exhibit D** (Plaintiffs' Motion to Consolidate, Defendants' Opposition to Motion to Consolidate, Order on Consolidation Motion, and Protective Order by Consent).

66.    **Notice to state court**. A copy of this Notice of Removal is being filed with the Clerk of the Superior Court of New Jersey, Law Division, Bergen County, and is being served on counsel of record, consistent with 28 U.S.C. § 1446(a), (d).

*[Remainder of this page intentionally left blank]*

WHEREFORE, Defendants remove this action to this Court for further proceedings according to law.

Dated: May 15, 2024                    By:        /s/ A. Matthew Boxer
                                                A. Matthew Boxer
                                                Gavin J. Rooney
                                                Rasmeet K. Chahil
                                                **LOWENSTEIN SANDLER LLP**
                                                One Lowenstein Drive
                                                Roseland, New Jersey 07068
                                                973.597.2500
                                                mboxer@lowenstein.com
                                                grooney@lowenstein.com
                                                rchahil@lowenstein.com

*Attorneys for Defendant LexisNexis Risk Data Management, LLC and RELX Inc.*

## <u>CERTIFICATION PURSUANT TO D.N.J. LOCAL RULE 11.2</u>

Pursuant to D.N.J. Local Rule 11.2, it is hereby stated that the matter in controversy between the parties is not the subject of any other action pending in any other Court or of a pending arbitration proceeding other than the state court action removed by this Notice: Case No. BER-L-000875-24 in the Superior Court of New Jersey, Law Division, Bergen County.  Over 60 other cases filed by Atlas asserting violations of Daniel's Law against various defendants are pending in the United States District Court for the District of New Jersey before Judge Harvey Bartle, III.

A case that is related but contains different claims against LNRDM, captioned *John Doe-1 v. LexisNexis Risk Data Management, LLC*, No. 24-4566, is also pending in the United States District Court for the District of New Jersey before Judge Harvey Bartle, III.

Dated: May 15, 2024

By:    <u>*/s/ A. Matthew Boxer*</u>
A. Matthew Boxer
Gavin J. Rooney
Rasmeet K. Chahil
**LOWENSTEIN SANDLER LLP**
One Lowenstein Drive
Roseland, New Jersey 07068
973.597.2500
mboxer@lowenstein.com
grooney@lowenstein.com
rchahil@lowenstein.com

*Attorneys for Defendant LexisNexis Risk Data Management, LLC and RELX Inc.*